# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| AMERICAN RAILCAR INDUSTRIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> HARTFORD INSURANCE COMPANY OF THE MIDWEST, et al., <br><br> Defendants. | No. 4:13-CV-778 CAS |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants Hartford Insurance Company of the Midwest ("Hartford") and Specialty Risk Services, LLC's ("SRS") motion to dismiss plaintiff American Railcar Industries, Inc.'s ("ARI") claims. ARI opposes the motion to dismiss. The matter is fully briefed and ready for disposition. For the following reasons, the Court will grant in part and deny in part defendants' motion to dismiss.

**Background**

This action arises out defendant Hartford's alleged breach of an insurance contract with plaintiff ARI, and Hartford's alleged failure to act in furtherance of ARI's best interests. In April 2008, an employee of ARI, George Tedder ("Mr. Tedder"), was injured at ARI's facility in Paragould, Arkansas. Another employee of ARI negligently operated a golf cart at the facility, causing Mr. Tedder's injury.

Mr. Tedder filed a workers' compensation claim against ARI, and Hartford defended ARI under the Policy. The Policy provided insurance coverage to ARI for workers' compensation claims and for work-related tort liability claims not covered by workers' compensation. Hartford

successfully argued that Mr. Tedder's injuries occurred while he was on break, and therefore his injuries were not compensable under Arkansas workers' compensation law.

After ARI defeated Mr. Tedder on his workers' compensation claim, Mr. Tedder filed a tort action in the United States District Court for the Eastern District of Arkansas. Hartford did not offer to defend or insure ARI under the Employers Liability section of the Policy. The tort action went to trial, and a jury awarded Mr. Tedder damages in the amount of $2,284,888.20. The District Court reduced the award to $1,547,388.20. The Eighth Circuit affirmed. See Tedder v. American Railcar Indus., Inc., --- F.3d ---, 2014 WL 67763 (8th Cir. Jan. 9, 2014).

In this case, ARI has sued Hartford and SRS claiming that defendants did not advise ARI that a successful defense of Mr. Tedder's workers' compensation claim would increase ARI's exposure to damages in a tort action. Given the statutory limitations of the types and amounts of damages under workers' compensation law, and that fact that a workers' compensation judgment would preclude Mr. Tedder for asserting a more lucrative tort claim, ARI argues they should have been advised that a successful denial of the workers' compensation claim would expose it to a potentially large judgment in tort. ARI brings this action in four counts: Breach of Contract against Hartford (Count I); Breach of Fiduciary Duty against Hartford and SRS (Count II); Breach of Implied Covenant of Fair Dealing against Hartford (Count III); and Negligent Claims Handling against Hartford and SRS (Count IV).[1]

---

[1] Initially, ARI named as a defendant in this case its lawyer in the underlying workers' compensation claim, Mr. Randy P. Murphy. Mr. Murphy filed a motion to dismiss based on lack of personal jurisdiction. After taking jurisdictional discovery, ARI dismissed its claims against Mr. Murphy without prejudice. See Doc. 38.

**Legal Standard**

On a motion to dismiss, the Court accepts as true the factual allegations contained in the complaint and grants the plaintiff the benefit of all reasonable inferences that can be drawn from those allegations. See Lustgraaf v. Behrens, 619 F.3d 867, 872-73 (8th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

**Discussion**

**I.     Choice of Law**

As an initial matter, the parties disagree over the choice of law. Hartford argues Arkansas law applies; ARI argues Missouri law applies. The choice of law is particularly important here, because ARI's claims for breach of fiduciary duty (Count II) and negligent claims handling (Count IV) would be barred by Arkansas' three-year statute of limitations, but not barred by Missouri's five-year statute of limitations.

In a case where federal jurisdiction is based on diversity of citizenship, the law of the forum state is applied when deciding choice of law issues. Klaxon Co. v. Stentor Electrical Mfg. Co., 313 U.S. 487 (1941); Whirlpool Corp. v. Ritter, 929 F.2d 1318, 1320 (8th Cir. 1991). Missouri follows the Restatement (Second) of Conflict of Laws sections 188 and 193 to determine choice of law issues in insurance contract actions. Viacom, Inc. v. Transit Cas. Co., 138 S.W.3d 723, 724-25 (Mo. 2004) (en banc).

The Eighth Circuit has discussed the interplay between sections 188 and 193 succinctly as

follows:

> Section 188 is a general choice-of-law test for use when a contract contains no choice-of-law provision. It is a multi-factored test for assessing the contacts a state has with the parties and the underlying events in a case. See Viacom, 138 S.W.3d at 725 (describing section 188). Section 193 is a more specific choice-of-law provision that addresses "contracts of fire, surety or casualty insurance" and treats the principal location of the insured risk as the most important factor in the choice-of-law determination. See Restatement (Second) of Conflict of Laws § 193 ("The validity of . . . [the] insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy . . . .").

St. Paul Fire & Marine Ins. Co. v. Building Constr. Enters., Inc., 526 F.3d 1166, 1168 (8th Cir. 2008).

Because the policy at issue is a workers' compensation and employers' liability insurance contract (i.e., casualty insurance), our analysis begins with section 193. Pursuant to section 193, the Court shall apply the law of "the state which the parties understood was to be the principal location of the insured risk during the term of the policy . . . ." Restatement (Second) of Conflict of Laws § 193 (1971). The comment section informs this analysis. The principal location of an insured risk, i.e., the "activity that is the subject matter of the insurance," is "the state where it will be during at least the major portion of the insurance period." Id. at cmt. b. In our case, the workers' compensation and employers' liability insurance covers the liability associated with a ARI's business operations in "all of [its] workplaces." See Policy, General Section, § E. The policy specifies that it covers all workplaces in the states listed in Item 3.A. of the Information Page. Id. Arkansas is one of the nine states specified in Item 3.A. See id. at Information Page, § 3.

Comment (f) to section 193 controls this case. Comment (f) concerns multiple risk policies that insure against risks located in several states and the special problems they present. Comment (f) contemplates an insurance policy that insures several immovable, static risks located in different

states. The example used in Comment (f) is a policy that insures dwelling houses located in states X, Y, and Z. In this instance, "the courts would be inclined to treat such a case, at least with respect to most issues, as if it involved three policies, each insuring an individual risk."

Plaintiff's Policy covered its workers' compensation claims and employers' liability claims. Plaintiff's employees were located in several facilities, each in a different state. This single Policy covered employees at ARI's workplaces in Arkansas, Florida, Georgia, Louisiana, Missouri, Mississippi, New York, Pennsylvania, and Texas. Although these risks are not technically immovable, the risks at each facility are fairly static. As Comment (f) to section 193 suggests, the Court is inclined to treat this case as if it involved several policies, each insuring an individual risk. The individual risks are located at each of ARI's separate facilities. Because Mr. Tedder brought a workers' compensation claim and tort action against plaintiff in Arkansas arising out of his injury at plaintiff's Arkansas facility, the Court will determine the rights and obligations of the parties under the Policy in accordance with Arkansas law.

In a footnote, plaintiff argues that section 193 Restatement (Second) of Conflict of Laws is inapplicable because the Policy affords coverage to ARI across multiple states, and therefore there is no principal location of the insured risk. For support, ARI cites St. Paul Fire & Marine Ins. Co. v. Building Construction Enterprises, 526 F.3d 1166, 1168 (8th Cir. 2008). In St. Paul Fire & Marine, the court analyzed Comment (f) and found it inapposite. The insured in St. Paul Fire & Marine was a general contractor that carried out general construction activities in several states. It had taken out a multi-risk commercial general liability policy through its insurer. In such an instance, because of the nature of the insured's business and the nature of the commercial general liability policy, it was not possible to predict with fair accuracy where the risk would be located during the life of the policy. Id. at 1169. The risk would be located wherever the general contractor

accepted work. Significantly, the Eighth Circuit stated: "[T]he commercial general liability policies at issue in the present case did not contemplate a set of enumerated construction job sites but rather were intended to cover [the contractor's] commercial operations wherever they happened to occur, including projects yet to begin when the policies were delivered. . . . The logic of Comment f is therefore inapposite to the case at hand." Id. at 1009; see also United Fire & Cas. Co. v. Titan Contractors Serv., Inc., 2013 WL 316060, \*\* 5-6 (E.D. Mo. Jan. 28, 2013).

Here, unlike St. Paul Fire & Marine, the parties entered into a workers' compensation and employers' liability policy that contemplated liability at ARI's workplaces in a fixed set of enumerated states. See General Section, § E; Information Page, §§ 3A. and 3B. This is not a case in which the policy was designed to cover commercial operations wherever they happened to occur, including projects that had not begun when the policy was delivered. ARI's covered workplaces were located in several states, but these workplaces were fixed. The policy expressly identified these several states as the location of the insured risk by specifically listing the states of these workplaces. See Policy, General Section, § E, Locations ("This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states. . . .") For example, Part Two (Employers Liability Insurance) of the Policy states:

**A.     How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.  The bodily injury must arise out of and in the course of the injured employee's employment by you.

2.  The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page [AR, FL, GA, LA, MO, MS, NY, PA, or TX].

    . . . .

Policy, Part Two - Employers Liability Insurance, § A.1-2.

Because the parties contemplated several fixed locations of the employment risk insured by the Policy, the Court finds that Comment (f) controls this case. Mr. Tedder's employment injury occurred at ARI's Arkansas facility, and therefore the Court will determine the rights and obligations of the parties in accordance with the law of Arkansas.

Even if the insurance-specific provision of the Restatement (Second) of Conflict of Laws were inapplicable, however, and the Court applied the general choice-of-law provision of section 188, the analysis would not likely change. Section 188 provides that the law of the state with the most significant relationship to the transaction and parties governs. The contacts that direct this analysis are: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. See Restatement (Second) of Conflict of Laws, § 188 (1971).

Although plaintiff argues that Missouri law applies pursuant to section 188, it has provided no information regarding the factors enumerated in parts (a) through (e) of section 188. Plaintiff simply concludes, without analysis, "[a]pplying these factors to the facts of this case, Section 188 mandates the application of Missouri law." (Opp'n at 6). Plaintiff has not stated the place of contracting or the place of negotiation of the contract.[2] Plaintiff has not stated the place of performance or the location of the subject matter of the contract. As for the domicile, residence, nationality, place of incorporation and place of business of the parties, again, plaintiff does not

---

[2]In its complaint, plaintiff states that "Hartford provided the Policy to ARI in Missouri and . . . Hartford also regularly worked with ARI in this judicial district." Compl. ¶ 35. This allegation does not provide information regarding the place of contracting or the place of negotiation.

address this in its brief. Going back to its complaint, plaintiff states that it is a corporation incorporated under the laws of North Dakota, with its principal place of business in Missouri. Defendant Hartford is incorporated under the laws of Connecticut, with its principal place of business in Connecticut. Defendant SRS is a Delaware limited liability company with its principal place of business in Tennessee. These contacts do not point to Missouri as the state with the most significant relationship to the transaction and parties.

From a cursory review of the Policy, the place of performance and the location of the subject matter of the contract are located in several states, including Arkansas. Pursuant to the Restatement (Second) of Conflicts, the location of the subject matter of the contract is significant to the analysis under section 188 when the contract deals with a specific physical thing, "such as the dishonesty of an employee in a fixed place of employment." § 188, cmt. (e). Thus, even under section 188 analysis, the location of the risk is important. Moreover, Comment (e) to section 188 contemplates an employment risk at a fixed place of employment. Here, the workers' compensation and employers' liability insurance contract at issue affords protection against employment risks at fixed places of employment. The location of these fixed employment facilities were known to the parties, and were specifically incorporated into the contract. See Policy, General Section, ¶ E. The parties likely expected that the local law of Arkansas would be applied to the workers at the Arkansas facility to determine the issues arising under the insurance contract. Id.

The Court finds that section 193 governs the conflict of laws issue for this insurance case. Pursuant to section 193, Arkansas law governs this action. Even if the Court were to apply the factors outlined in section 188, it does not find it plausible that these factors would point to Missouri law as the law applicable to this issue.

**II.     Motion to Dismiss Claims**

### A. Breach of Contract (Count I)

Defendants move to dismiss plaintiff's breach of contract claim, but only to the extent plaintiff seeks to allege a breach of contract related to defendants' defense of the underlying workers' compensation claim. Defendants do not address ARI's allegations that Hartford had no intention of covering ARI's subsequent exposure in the tort action under the employers' liability section of the Policy. They state that "Hartford is aware that Count I of plaintiff's complaint also alleges a breach of contract on the part of Hartford in failing to defend Tedder's civil action," and they do not direct their motion to dismiss to this alleged breach of contract.

Plaintiff responds that the issue is not whether Hartford's successful defense, standing alone, breached the provisions of the Policy—rather, the issue is whether Hartford's overall conduct breached the policy. The Court agrees. Read in its entirety, Count I alleges facts sufficient to state a claim for breach of contract that is plausible on its face. The Court will deny defendants' motion to dismiss Count I.

### B. Breach of Fiduciary Obligation (Count II), and Negligent Claims Handling (Count IV)

Applying the law of Arkansas (see Part I, supra), the Court finds that plaintiff's claims for breach of fiduciary obligation and negligent claims handling are time barred. In its complaint, plaintiff alleges "around June 16, 2008" defendant denied Mr. Tedder's workers' compensation benefits based on the contention that the accident occurred while Mr. Tedder was taking a break. (Compl. at ¶ 15). The complaint also alleges that on September 2, 2009, Mr. Tedder filed his tort claim in the United States District Court for the Eastern District of Arkansas. (Compl. at ¶ 24).

The statute of limitations for the tort of breach of fiduciary duty is three years. See Arkansas Code Ann. §16-56-105. Likewise, the statue of limitations for negligence is three years. Id. In its

opposition to defendants' motion to dismiss, ARI points to the date "of the denial of the Workers' Compensation Claim and the filing of the Tort Action" as the starting point for the running of the statute of limitations. (Pl. Opp'n at 10-11). Accordingly, at the latest, the three-year statute of limitations began to run on September 2, 2009, when Mr. Tedder filed his tort claim. Id. Plaintiff did not file this action until April 23, 2013. Plaintiff's claims for breach of fiduciary duty (Count II), and negligent claims handling (Count IV) are time barred. The Court will dismiss these claims.

### C. Breach of Implied Covenant of Good Faith (Count III)

Similarly, plaintiff's claim for breach of the implied covenant of good faith must be dismissed. Arkansas does not recognize a cause of action for breach of the implied covenant of good faith. See West Memphis Adolescent Residential LLC v. Compton, 374 S.W.3d 922, 927 (Ark. Ct. App. 2010) ("Arkansas law, however, does not recognize a separate tort cause of action for breach of those implied covenants [of good faith and fair dealing].") (citing Preston v. Stoops, 285 S.W.3d 606 (Ark. 2008)). For this reason, the Court will dismiss Count III.

**Conclusion**

For the foregoing reasons, the Court will grant defendants' motion to dismiss as to Counts II, III, and IV, and will deny defendants' motion to dismiss as to Count I.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Hartford Insurance Company of the Midwest and Specialty Risk Services, LLC's motion to dismiss is **GRANTED in part** and **DENIED in part**. The motion is granted as to Counts II, III, and IV, and denied as to Count I. [Doc. 26]

An order of partial dismissal will accompany this memorandum and order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 30th day of January, 2014.