# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| AMERICAN RAILCAR INDUSTRIES, INC., | ) ) ) |
| Plaintiff, | ) )  No. 4:13-CV-778 CAS |
| v. | ) ) ) |
| HARTFORD INSURANCE COMPANY OF THE MIDWEST, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Hartford Insurance Company of the Midwest's ("Hartford") motion for summary judgment on the remaining count of plaintiff American Railcar Industries, Inc.'s ("ARI") complaint. ARI opposes the motion. The matter is fully briefed and ready for decision. For the following reasons, the Court will grant defendant's motion for summary judgment.

**I.  Background**

This action arises out defendant Hartford's alleged breach of an insurance contract with plaintiff ARI, and Hartford's alleged failure to act in furtherance of ARI's best interests. In April 2008, an employee of ARI, George Tedder ("Mr. Tedder"), was injured at ARI's facility in Paragould, Arkansas. Another employee of ARI negligently operated a golf cart at the facility, causing Mr. Tedder's injury.

Mr. Tedder filed a workers' compensation claim against ARI, and Hartford defended ARI under the policy. The policy provided insurance coverage to ARI for workers' compensation

claims and for employers liability claims not covered by workers' compensation. Hartford successfully argued that Mr. Tedder's injuries occurred while he was on break, and therefore his injuries were not compensable under Arkansas workers' compensation law.

After ARI defeated the workers' compensation claim, Mr. Tedder filed a tort action against ARI in the United States District Court for the Eastern District of Arkansas ("Tedder civil action"). Hartford did not defend or insure ARI in the Tedder civil action. The civil action went to trial, and a jury awarded Mr. Tedder damages in the amount of $2,284,888.20. The district court reduced the award to $1,547,388.20. The Eighth Circuit Court of Appeals affirmed. See Tedder v. American Railcar Indus., Inc., 739 F.3d 1104 (8th Cir. 2014).

In this case, ARI has sued Hartford claiming that it did not advise ARI that a successful defense of Mr. Tedder's workers' compensation claim would increase ARI's exposure to damages in a tort action. ARI brought the action in four counts: Breach of Contract against Hartford (Count I); Breach of Fiduciary Duty against Hartford and SRS (Count II); Breach of Implied Covenant of Fair Dealing against Hartford (Count III); and Negligent Claims Handling against Hartford and SRS (Count IV).[1] Counts II through IV were dismissed on defendant's motion to dismiss. Hartford's motion for summary judgment seeks judgment on the remaining count, Count I, for breach of contract.

Hartford states it had no obligation to defend and indemnify ARI for Mr. Tedder's civil action under the employers liability policy because Mr. Tedder did not sustain injury within the

---

[1]Initially, ARI named as a defendant in this case its lawyer in the underlying workers' compensation claim, Mr. Randy P. Murphy. Mr. Murphy filed a motion to dismiss based on lack of personal jurisdiction. After taking jurisdictional discovery, ARI dismissed its claims against Mr. Murphy without prejudice. See Doc. 38.

course and scope of his employment. Further, Hartford states that even if coverage existed, it would be barred because ARI failed to timely notify it of Mr. Tedder's civil action.

## II.     Summary Judgment Standard

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Board of Educ., Island Trees v. Pico, 457 U.S. 853, 863 (1982). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." Cearley v. General Am. Transp. Corp., 186 F.3d 887, 889 (8th Cir. 1999) (citing Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990)).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving the motion for summary judgment.

## III.    Facts

### *The Underlying Incident*

On April 24, 2008, Mr. Tedder was an employee of plaintiff ARI and worked at its facilities in Paragould, Arkansas. On that morning, Mr. Tedder was taking an employer-mandated break. After being told to take his break, Mr. Tedder finished working on a pipe, then took two steps to the break table and sat down. Mr. Tedder stated he often used the table to work on parts and he characterized the table as a "combination break/work table." Less than thirty seconds after sitting down for his break, a fellow employee, Leon Pajek, lost control of a golf cart he was driving and struck the table, pinning Mr. Tedder between the table and the pipe rack on the shop wall and injuring his lower back.

*The Workers' Compensation Case*

Mr. Tedder filed a claim for workers' compensation benefits with the Arkansas Workers' Compensation Commission arising out of the incident. The workers' compensation claim was forwarded to Georgia Diemer ("Ms. Diemer") at Specialty Risk Services ("SRS"). At the time of Mr. Tedder's workers' compensation claim, SRS was a division of Hartford, and Ms. Diemer was employed by Hartford.

At deposition, Ms. Diemer testified that she believed the claim would be non-compensable because Mr. Tedder was not working at the time of the incident, and under Arkansas law, people on break are not "in the course of employment." She testified that she discussed this with ARI's safety and environmental manager, Jerry Powers, who agreed with her assessment. Ms. Diemer assigned the case to attorney Randy Murphy to represent ARI.

On December 19, 2008, a workers' compensation hearing was held to determine the compensability of Mr. Tedder's claim under the Arkansas Workers' Compensation Act. Administrative Law Judge David Greenbaum determined that the claim was not compensable because Mr. Tedder was on break at the time of the incident and was not performing employment services. Mr. Tedder appealed Judge Greenbaum's ruling, and the Arkansas Workers' Compensation Commission affirmed. The Commission adopted Judge Greenbaum's ruling.

*Mr. Tedder's Civil Action and Notice to Hartford*

On August 3, 2009, Mr. Tedder's attorney forwarded a letter to ARI indicating he would file civil suit in Arkansas if they did not reach a settlement regarding Mr. Tedder's bodily injury. The email was received at ARI by Diana Gould, the assistant of Michael Obertop, and was forwarded to Mr. Obertop. At that time, Mr. Obertop was ARI's director of SEC reporting,

corporate secretary, and assistant treasurer. Mr. Obertop never notified Hartford of the civil tort action. (ARI's Resp. to Hartford's SOF 22).

Less than a month later, on September 2, 2009, Mr. Tedder filed a civil suit in the United States District Court for the Eastern District of Arkansas against ARI for the injuries he sustained in the April 28, 2008 accident. Mr. Obertop does not recall notifying Hartford of the filing of the complaint. During the time between the filing of the Tedder civil action through its trial, Mr. Obertop does not recall notifying Hartford of the filing of the civil action against ARI.

On September 21, 2009, ARI's counsel in the civil action, Robert Thompson, wrote a letter to ARI's counsel in the workers' compensation case, Randy Murphy. Mr. Thompson stated that he represented ARI in the civil action, and asked Mr. Murphy for any relevant discovery he had obtained in the workers' compensation case. Mr. Thompson referenced the title of the civil tort action, the court, and the cause number.

According to ARI, during the administration of the workers' compensation claim, Ms. Diemer was notified several times of Mr. Tedder's intent to file a tort action. (ARI's Resp. to Hartford's SOF 26-27).

ARI employee Jerry Powers "believes he called Diemer and told her about the civil tort action." (ARI's SOF 25).

Hartford's Assistant Vice President of the major case liability section, Lisa Roche, testified that she reviewed Hartford's claim records and confirmed that Hartford had no record of any notice from ARI with respect to the Tedder civil action until Hartford received a letter from attorney Herbert Beigel dated January 11, 2013. Hartford's agent, Ms. Diemer, testified that she received no notice of the Tedder civil action until after it had been taken to verdict.

On November 30, 2009, ARI filed Rule 26 initial disclosures in the Tedder civil action. In these disclosures, ARI stated it did not have any insurance that could be used to satisfy a judgment in the case. The case was tried to a jury in April 2012. The jury reached a verdict in favor of Tedder, awarding him $2,284,888.20. The trial court reduced the judgment to $1,547,388.20. The Eighth Circuit affirmed.

In response to Hartford's interrogatory asking ARI to "[p]lease state whether [ARI] or any representative of [ARI] ever requested that any of defendants defend or indemnify [ARI] with respect to the civil lawsuit filed by George Tedder," ARI responded:

> Yes. A Notice of Loss and/or claim was transmitted by Plaintiff to Hartford and/or SRS during the period of April to June 2008, pursuant to the policy at issue, and a copy of the confirmed Notice of Loss and related documents are being produced. In addition, Letters from Herbert Beigel, dated January 11, 2013 and February 13, 2013.

ARI's Resp. to Interrogatory 12 (Hartford's SOF, Ex. X).

*The Insurance Coverage Action*

On April 23, 2013, ARI filed the present action. ARI alleges that on June 12, 2008, it gave notice of the claim to Hartford pursuant to the terms of the workers' compensation and employer's liability insurance policy (the "policy"). Part One of the policy provided workers' compensation insurance for compensable workers' compensation claims; Part Two of the policy provided employer liability insurance for certain claims against an employer for bodily injury arising out of and in the course of an injured employee's employment.

The only Count of ARI's compliant remaining is Count I for breach of contract. In Count I, ARI alleges a cause of action against Hartford: ". . . by refusing to provide coverage under Part One of the policy in contesting the workers' compensation claim, by refusing to provide ARI with coverage for Tedder's injuries under Part Two of the policy, and by refusing to provide

a defense to the tort action under Part Two of the policy, Hartford breached its contract of insurance with ARI." (Compl. ¶ 44.)

*The Policy*

In relevant part, the policy provides:

### PART ONE - WORKERS COMPENSATION INSURANCE

**A.** **How This Insurance Applies**
This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.

2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

**B.** **We Will Pay**
We will pay promptly when due the benefits required of you by the workers compensation law.

**C.** **We Will Defend**
We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

\*\*\*

### PART TWO – EMPLOYERS LIABILITY INSURANCE

**A.** **How This Insurance Applies**
This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

\*\*\*

**B.     We Will Pay**
We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. for care and loss of services; and

3. for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee;

Provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

\*\*\*

**D.     We Will Defend**
We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance.  We have the right to investigate and settle these claims, proceedings and suits.  We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.  We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

\*\*\*

**I.     Actions Against Us**
There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

\*\*\*

**PART FOUR – YOUR DUTIES IF INJURY OCCURS**

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

\*\*\*

3. Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

\*\*\*

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

\*\*\*

**IV. Discussion**

Defendant's motion for summary judgment argues that summary judgment should be entered in its favor on Count I on the grounds that: (1) Hartford had no duty to defend or indemnify ARI under Part Two of its workers' compensation and employers liability policy for the Tedder civil action because Mr. Tedder did not sustain a bodily injury within the course and scope of his employment; and (2) ARI's late notice of the Tedder civil action bars coverage if it existed.[1] Plaintiff responds that coverage existed under Part Two of its policy because under Arkansas common law, Mr. Tedder was acting in the course of his employment when the injury occurred. Plaintiff also argues it provided notice of the Tedder civil action to Hartford, and

---

[1] In its opening brief, Hartford assumed ARI would argue that Hartford breached its contract because Hartford should have advised ARI that a successful defense of the workers' compensation claim would increase ARI's exposure to damages in a tort action. ARI did not respond to this issue on summary judgment. The Court has found no law requiring an insurance company to not defend a case or to pay an uncovered claim so that its insured might be spared exposure to a more costly claim.

Hartford waived its right to further notice by abandoning ARI's defense after succeeding on the workers' compensation claim.

A. Coverage for Mr. Tedder's Civil Action

Hartford moves for summary judgment, stating that under Arkansas law, Hartford had no contractual obligation to defend or indemnify ARI for Tedder's civil action. ARI responds that Arkansas common law construes the language of the employers liability coverage (Part Two) in its plain and popular sense, and would provide coverage because Mr. Tedder was acting within his course of employment when he was injured. ARI states that outside the workers' compensation context, Arkansas law provides that if the employee was acting in furtherance of his employer's interest, and was not engaged in an exclusively personal act, then he was within the course of his employment. ARI cites Orkin Exterminating Co. v. Wheeling Pipeline, Inc., 567 S.W.2d 117, 119 (Ark. 1978), for support.

ARI's argument is defeated by more recent Arkansas cases in which its courts have stated that the test for determining whether an employee was performing "employment services" is the same as the test for determining whether an employee was acting within the "course of employment." Under Arkansas workers' compensation statutes, a compensable injury is one arising out of and in the course of employment and which requires medical services or results in disability or death. See Ark. Code. Ann. 11-9-102(4)(A)(i). A compensable injury does not include an injury inflicted upon the employee at a time when employment services were not being performed. Id. at 11-9-102(4)(B)(iii). See Trezza v. USA Truck Inc., 445 S.W.3d 521, 523 (Ark. Ct. App. 2014). The Arkansas Supreme Court has interpreted the term "employment services" in this workers compensation context as the performance of something that is generally required by an employer. "We use the same test to determine whether an employee was

performing 'employment services' as we do when determining whether an employee was acting within 'the course of employment.'" Id. (citing Cook v. AFB Freight Sys., Inc., 194 S.W.3d 794 (Ark. 2004)). "The test is whether the injury occurred within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's interest directly or indirectly." Id.

Arkansas courts have consistently used the same test to determine whether an employee was performing employment services as they do when determining whether an employee was acting within the course and scope of employment. In an opinion expressly overruling all inconsistent prior opinions, the Arkansas Supreme Court said:

> Since 1993, we have twice been called upon to construe the statutory language found in [the workers' compensation statutes]. We have held that an employee is performing "employment services" when he or she "is doing something that is generally required by his or her employer . . . ." We use the same test to determine whether an employee was performing "employment services" as we do when determining whether an employee was acting within "the course of employment." The test is whether the injury occurred "within the time and space boundaries of the employment, when the employee [was] carrying out the employer's purpose or advancing the employer's interest directly or indirectly."

Collins v. Excel Specialty Prods., 69 S.W.3d 14, 18 (Ark. 2002) (internal citations omitted).

Arkansas courts have held that an employee is not advancing his employer's interest and is not acting in the course of his employment when taking a mandated break. Id. (affirming Workers' Compensation Commission's finding that trucker injured on thirty-four hour restart was off work and not required to do anything and injury was not compensable); see also Cook, 194 S.W.3d at 795 (affirming Commission's finding that trucker injured while taking a mandated eight-hour overnight rest break not compensable).

Arkansas courts, however, distinguish cases in which an employee is on a bathroom break or in the process of returning to work from a break. For example, in Mitchell v. Tyson

- 11 -

Poultry, Inc., 292 S.W.3d 848, 849 (Ark. Ct. App. 2009), an employee was fatally injured while returning to the office to obtain instructions after he had finished his break. The Court found that the decedent had finished his break and was performing the employment service of returning to the office when the fatal injury occurred. Because he was finished with his break and on his way to receive further instructions, he was within the time and space boundaries of his employment. Id. at 850 (citing Wal-Mart Stores, Inc. v. Sands, 91 S.W.3d 93 (Ark. Ct. App. 2002) (finding employee preparing to return to work from a break by returning her purse to her locker when injury occurred was within the time and space boundaries of employment and carrying out employer's purpose)); see also Texarkana Sch. Dist. v. Conner, 284 S.W.3d 57, 60 (Ark. 2008) (upholding Commission's finding that employee returning to work and attempting to open a parking gate was providing a benefit to his employer); Pifer v. Single Source Transport., 69 S.W.3d 1, 5 (Ark. 2002) ("We note that the activity of seeking toilet facilities, although personal in nature, has been generally recognized as a necessity such that accidents occurring while an employee is on the way to or from toilet facilities, or while he or she is engaged in relieving himself or herself, arise within the course of employment.").

In response to summary judgment, ARI argues that whether an employee is acting in the course of employment is different in the context of Arkansas workers' compensation statutes and under Arkansas common law. (ARI Resp. at 8-9.) The Court has found no support for this proposition. It has found no case law holding that the contractual phrase "in the course of the injured employee's employment" in Part Two of the policy should be interpreted differently from the identical phrase in Arkansas workers' compensation statutes. It would be inconsistent if Part One of the policy defined "course of employment" under the workers' compensation statutes as providing no coverage for employee breaks; but Part Two of the policy defined

"course of employment" under Arkansas common law as providing coverage for employee breaks. Because the language in Part One as borrowed from Arkansas workers' compensation statutes and Part Two is the same, the Court will give it the same interpretation. See generally Devine v. Great Divide Ins. Co., 350 P.3d 782, 786-89 (Alaska 2015) (discussing phrase "in the course of employment" in context of workers compensation/employers liability insurance policies versus commercial general liability policies).

As stated by the Arkansas Supreme Court in Collins, "the test is whether the injury occurred within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's interest directly or indirectly." Collins, 69 S.W.3d at 18. Viewing the facts in the light most favorable to ARI, Mr. Tedder was taking an employer-mandated break when he was injured. After being told to break, Mr. Tedder finished working on a pipe. Then he took two steps to the break table and sat down in the immediate vicinity of his work area. He was injured less than thirty seconds later as the golf cart driven by Mr. Pajek went out of control and hit the break table. It is undisputed that Mr. Tedder was taking a break from work and was not performing any employment related services when he was injured. On this record under Arkansas law, the Court finds the injury occurred outside the time and space boundaries of employment when Mr. Tedder was not carrying out ARI's purpose or advancing ARI's interest. The Court finds that under Arkansas law, Mr. Tedder's injury did not arise out of and in the course of his employment by ARI, and thus was not covered under Part Two of the policy. The Court will grant defendant's motion to for summary judgment on this point.

B.  ARI's Notice to Hartford of Mr. Tedder's Civil Action

Hartford argues that even if coverage existed, it had no duty to defend Tedder's civil action because proper notice was not given by ARI. ARI responds that it had given Hartford notice of Mr. Tedder's injury, and Hartford had additional notice that Mr. Tedder was going to file a civil suit.

Viewed in the light most favorable to ARI, the facts surrounding notice are as follows: Mr. Tedder was injured on April 24, 2008. ARI gave prompt notice to Hartford of Mr. Tedder's injury. (ARI SOF ¶¶ 8-9.) On June 6, 2008, Mr. Tedder filed a workers' compensation claim. (Hartford SOF ¶ 43.) On June 12, 2008, ARI gave notice of the claim to Hartford pursuant to the terms of the workers' compensation and employer's liability insurance policy. (Id. ¶ 44.)

According to the notes of Hartford's agent responsible for administering the workers' compensation claim, Ms. Diemer, Hartford knew that Mr. Tedder intended to pursue a civil tort claim against ARI if his workers' compensation claim was denied. (ARI SOF ¶¶ 14, 17.)

On September 2, 2009, Mr. Tedder filed his civil action in federal court in Arkansas. ARI points to a letter dated September 21, 2009 from its attorney in the Tedder civil action, Robert Thompson, to its attorney in the workers' compensation action, Mr. Murphy, as giving notice to Hartford of the civil action. In the letter, Mr. Thompson states that he represents ARI in the Tedder civil action and that he seeks any relevant discovery Mr. Murphy obtained in the workers' compensation action. (ARI SOF, Ex. 7.)

With respect to any direct conversation between ARI and Hartford regarding Mr. Tedder's filing of his civil action, ARI's employee Jerry Powers testified at deposition that "I know I think Georgia [Diemer] and I had a conversation about, hey, this has gone civil . . . ." (Powers Dep. at 37.) He later stated that he "cannot recall with certainty," but "probably talked

about [the Tedder civil action]" in a conversation with Ms. Diemer after it had been filed. (Id. at 44.) When asked whether he was talking to Ms. Diemer to report the claim to Hartford or whether the conversation was an aside when talking about something else, Mr. Powers stated it was "just a conversation. It wasn't to report it . . . ." (Powers Dep. at 41).

The Tedder civil action was tried to a jury in April 2012. The jury rendered its verdict on April 11, 2012, and the district court ruled on post-judgment motions on December 5, 2012. Hartford received a letter requesting coverage for the Tedder civil action from ARI's present counsel, Herbert Beigel, on January 11, 2013.

Hartford has filed the affidavit of its Assistant Vice President of the major case liability section, Lisa Roche, who confirmed that after reviewing the claim records, Hartford has no record of any notice from ARI with respect to the Tedder civil action until it received Mr. Beigel's letter dated January 11, 2013. (Hartford SOF, Ex. V.)

The policy states, in relevant part:

**PART TWO – EMPLOYERS LIABILITY INSURANCE**

\* \* \*

**I.**     **Actions Against Us**

    There will be no right of action against us under this insurance unless:

    1.     You have complied with all the terms of this policy; . . .

\* \* \*

**PART FOUR – YOUR DUTIES IF INJURY OCCURS**
Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

\* \* \*

3.     Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

\* \* \*

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

"Arkansas courts apply the general rule that where an insurance policy provides that the giving of notice of a loss, claim, or lawsuit is a condition precedent to recovery, the insured must strictly comply with the notice requirement, or risk forfeiting the right to recover from the insurance company." Fireman's Fund Ins. Co. v. Care Mgmt., Inc., 361 S.W.3d 800, 803 (Ark. 2010). "The insurance company need not show that it was prejudiced by any delays in or lack of notification." Id.; see also id. at n.1 (acknowledging that may states are taking the "modern approach" and requiring a showing of prejudice more frequently, but "declin[ing] at this time to overturn our long line of precedent. In Arkansas, a condition precedent is still a condition precedent."). On the other hand, if notice is not a condition precedent to recovery, the insurance company must show it was prejudiced by the delay in notice. Id. at 10.

Here, notice is a condition precedent to recovery under the policy. The policy states that ARI will have no right of action against Hartford under the policy unless ARI "complied with all the terms of this policy." (Policy at Part Two, I.) One of the terms of the policy is that ARI had the duty to "[p]romptly give [Hartford] all notices, demands and legal papers related to the injury, claim, proceeding or suit." (Id. at Part Four, 3.) While it is true that ARI gave notice to Hartford of Mr. Tedder's injury and the filing of his workers' compensation claim, ARI did not promptly give Hartford notice, demands and legal papers related to the Tedder civil action. Instead, ARI hired its own counsel to defend the case. ARI did not request coverage for the

Tedder civil action until after it had been tried and a verdict had been reached. Hartford's records indicate they received no notice from ARI with respect to the Tedder civil action until it received Mr. Beigel's letter dated January 11, 2013

Mr. Powers' testimony that he thought he mentioned the Tedder civil action on the phone to Ms. Diemer is speculative. He stated that he could not recall the conversation with certainty, and when asked whether he was assuming he had talked to Ms. Diemer, Powers responded, "Yes." (Powers Dep. at 44.) "As with any summary judgment motion, while we are required to make all reasonable inferences in favor of the non-moving party, we do not resort to speculation." Brown v. Fortner, 518 F.3d 552, 558 (8th Cir. 2008) (citing Twymon v. Wells Fargo & Co., 462 F.3d925, 934 (8th Cir. 2006)). Even if the Court assumes that during a telephone conversation, Mr. Powers mentioned to Ms. Diemer that the Tedder case had "gone civil," the Court is unable to find that this alone meets ARI's duty to promptly gave Hartford all notices, demands and legal papers related to Mr. Tedder's injury, claim, proceeding or suit. (Policy, Part Four, 3.) Mr. Powers acknowledged that the conversation was "just a conversation" and "[i]t wasn't to report it." (Powers Dep. at 41.)

The Court finds that ARI's failure to timely notify Hartford of the filing of the Tedder civil action and tender Tedder's civil complaint constituted a breach of the policy and would bar coverage even if it existed.[2]

---

[2] Because the Court finds ARI's failed to provide prompt notice to Hartford of the filing of the Tedder civil action, the Court rejects ARI's theory that Hartford should have accepted the defense or issued a reservation of rights. It is impossible to require this of an insurer that has not been provided notice of a suit.

## V. Conclusion

For the foregoing reasons, the Court will grant defendant Hartford Insurance Company of the Midwest's motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Hartford Insurance Company of the Midwest's motion for summary judgment is **GRANTED**. [Doc. 69]

**IT IS FURTHER ORDERED** that plaintiff American Railcar, Inc.'s motion for oral argument is **DENIED as moot**. [Doc. 81]

A Judgment will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 18th day of March, 2016.